IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MCS SERVICES, INC.                *
                                  *
            v.                    *   Civil Action WMN-10-1042
                                  *
WILLIAM T. JONES and              *
OCÉ NORTH AMERICA, INC.           *


    *       *       *       *       *       *       *       *       *       *       *       *

**MEMORANDUM**

    Pending before the Court is Defendants William T. Jones and

Océ North America, Inc.'s Motion to Dismiss the Amended

Complaint, Paper No. 30.[1]  Defendants bring their motion under

Federal Rule of Civil Procedure 12(b)(6), and it has been fully

briefed.  Upon review of the pleadings and applicable case law,

the Court determines Defendants' motion will be granted in part

and denied in part as set forth below.

**I.    BACKGROUND**

    Plaintiff MCS Services, Inc. (MCS) brought four claims

against Defendants William T. Jones (Jones) and Océ North

America, Inc. (Océ) alleging breach of contract and associated

tort claims, plus violations of the Maryland Uniform Trade

Secret Act.  The claims relate to Océ's employment of Jones, a

former MCS employee who signed a noncompetition and

---

[1] Pending also is Plaintiff MCS Services, Inc.'s motion to file a
surreply highlighting Defendants' mischaracterizations of MCS's
arguments in opposition to this motion.  Paper No. 48.  As the
Court was already aware of these mischaracterizations, MCS's
motion will be denied as moot.

confidentiality agreement with MCS, and the alleged
misappropriation of MCS trade secrets by Jones and Océ.

MCS maintains and repairs a variety of sophisticated laser
printing products, including high speed continuous form laser
printers.[2]  Océ manufactures, sells and services laser printers
and other office productivity equipment.  As such, Océ and MCS
are direct competitors within the field of high speed laser
printer maintenance.  Although MCS does not manufacture its own
printers, it services those made by Océ, and it also sells
refurbished Océ units.

From September, 2005 until March, 2010, MCS employed Jones
as "National Tech Support, Mid-West Regional Manager and Toner
Sales Representative, and Maintenance Trainer."  At MCS, Jones
was charged with developing and managing MCS customers
throughout the Midwest, some of which operated Océ printers.  He
also managed five field engineers who serviced Océ machines.  To
carry out his responsibilities, MCS gave Jones access to
confidential and proprietary MCS information, including customer
lists and contacts, pricing and pricing methodologies, supplier
lists, and other business plans and procedures it developed to
provide a competitive advantage.

---

[2] All facts recited here are as alleged in Plaintiff's Amended
Complaint and are assumed to be true for purposes of this Rule
12(b)(6) motion.

Consequent to his employment, Jones signed an Employee

Confidentiality, Non-Solicitation, and Non-Compete Agreement

(Agreement) in early 2007.[3]  The Agreement sought to prevent

Jones from working for a competitor for a period of one year if

and when Jones left MCS.  It also prevented Jones from

disclosing MCS trade secrets or soliciting MCS customers upon

termination of his employment.  In March, 2010, Jones left MCS

and went to work for Océ.  Shortly thereafter, MCS filed the

instant action.

In its Amended Complaint, MCS alleges that Jones obtained a

position with Océ while he was still working for MCS.  In the

process, MCS claims Jones provided Océ with MCS trade secrets

---

[3] When reviewing a Rule 12(b)(6) motion to dismiss, a district
court generally may not consider any material beyond the
pleadings.  See Phillips v. LCI Int'l Inc., 190 F.3d 609, 618
(4th Cir. 1999).  Documents attached to the complaint, however,
are part of the complaint and are properly considered on a
motion to dismiss.  Fed. R. Civ. P. 10(c) ("A copy of a written
instrument that is an exhibit to a pleading is part of the
pleading for all purposes.").  In addition to documents attached
to the complaint, the Court may consider material attached to
the motion to dismiss if it "was integral to and explicitly
relied on in the complaint and [if] the plaintiffs do not
challenge its authenticity."  Phillips, 190 F.3d at 618
(internal citations omitted).
    Accordingly, the Court will consider the Agreement in this
memorandum as MCS attached it to the first Complaint and later
explicitly relied upon it in the Amended Complaint.  The Court
will not, however, consider any other documents, including those
referenced in this motion's briefs that the parties obtained in
connection with MCS's motion for preliminary injunction.  The
Court also declines to convert this motion to dismiss into a
motion for summary judgment in which such facts could be
properly considered.  See Villeda v. Prince George's County, 219
F. Supp. 2d 696, 698 (D. Md. 2002).

and confidential information, including MCS customer lists, contacts and requirements, and MCS operating procedures and processes. MCS submits that these actions, along with Jones's continued employment by direct competitor Océ, violate the noncompetition and nondisclosure provisions of the Agreement (Count I). In addition, MCS claims that Océ employed Jones and accepted confidential MCS information with full knowledge of the Agreement and thus tortiously interfered with the Agreement (Count II), and that Océ willfully accepted the MCS customer lists to cause MCS damage and improperly interfere with MCS's competitive advantage (Count III). Finally, MCS argues that Océ's actions violate the Maryland Uniform Trade Secret Act (Count IV).[4]

## II. LEGAL STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) provides that any pleading seeking relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "detailed factual allegations," yet "naked assertions, devoid of further factual enhancement" are insufficient. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 St. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp.

---

[4] MCS delineates as "Count V" of its Amended Complaint a request for injunctive relief. Injunctive relief is a remedy, not a separate cause of action, and need not be addressed here. See Fare Deals, Ltd. v. World Choice Travel.com, Inc., 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001).

v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotations omitted).  Likewise, unadorned accusations and rote recitation of a cause of action's elements fail to meet the requisite pleading standard.  Id.

Rather, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Id.  In this context, the plausibility standard is not a probability requirement, but it nonetheless requests more than the mere possibility of a defendant's liability.  Id.  Indeed, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563. Moreover, when considering a Rule 12(b)(6) motion, the court is required to construe all facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. Federal Bureau of Investigation, 1 F.3d 255, 256 (4th Cir. 1993)).

**III. DISCUSSION**

Defendants challenge Count I by arguing that MCS's noncompetition agreement is unenforceable as a matter of law. They also argue that MCS has failed to allege in its Amended Complaint facts sufficient to support Counts II through IV. Each count will be addressed in turn.

## A.    Breach of Contract

MCS alleges Jones breached the Agreement when he: (1) violated the noncompetition provision by accepting a position with a competitor company and engaging in competitive activities; and (2) misappropriated MCS trade secrets in violation of the nondisclosure provision.[5] These allegations will be considered individually.

### 1.    Noncompetition

Under Maryland law, the enforceability of a noncompetition clause depends upon the unique language of the clause at issue.[6] Holloway v. Faw, Casson & Co., 572 A.2d 510, 515 (Md. 1990).

---

[5] MCS also includes in its Amended Complaint a cursory discussion of the Agreement's nonsolicitation provision, which barred Jones from contacting MCS customers upon his termination from MCS. See Am. Compl. ¶¶ 11, 14-15. MCS does not, however, allege facts suggesting Jones violated the provision, and to the extent MCS speculates that Jones's job description at Océ includes the solicitation of MCS customers, it does so only within the context of its allegation that Jones violated the Agreement's noncompetition provision. See id. at ¶ 27. Thus, despite MCS's brief discussion of the nonsolicitation provision, MCS does not specifically allege Jones violated that provision.

[6] Section 15 of the Agreement stipulates that the terms of the Agreement are to be interpreted according to the state law of Maryland.

Courts must determine "whether the particular restraint is reasonable on the specific facts." Ruhl v. F.A. Bartlett Tree Expert Co., 225 A.2d 288, 291 (Md. 1967). "While such restrictions may be enforced under some circumstances, there is no sure measuring device designed to calculate when they are. Rather, a determination must be made based on the scope of each particular covenant itself . . . . When such an analysis is made, some restrictive covenants are deemed enforceable while others are not." Becker v. Bailey, 299 A.2d 835, 838 (Md. 1973) (comparing Maryland cases).

A restrictive covenant is a restraint of trade, and it will only be enforced if all of the following four conditions are met: "(1) the employer must have a legally protected interest; (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest; (3) the covenant cannot impose an undue hardship on the employee; and (4) the covenant cannot violate public policy." Deutsche Post Global Mail, Ltd. v. Conrad, 116 F. App'x 435, 438 (4th Cir. 2004) (interpreting Maryland law). "Employers have a legally protected interest in preventing departing employees from taking with them the customer goodwill they helped to create for the employer." Id. Thus, an employer may seek to prevent a former employee from "using the contacts established during employment to pirate the employer's

customers." <u>Holloway</u>, 572 A.2d at 515. On the other hand, mere protection from enhanced competition is not a protectable interest. <u>Id.</u> A restrictive covenant is not enforceable if its sole purpose is to prevent a company's employees from joining another company, thereby making the new company a more efficient competitor. <u>Id.</u> Similarly, overbroad covenants not reasonably necessary to protect the valid interest are also unenforceable. <u>See</u> <u>Deutsche Post</u>, 116 F. App'x at 438.

In this case, the relevant text of the Agreement's noncompetition clause provides:[7]

> Section 5.5 Non-Competition. During the course of Employee's employment with the Company, and for a period of one (1) year following the date of the cessation of Employee's employment with the Company for any reason whatsoever, Employee shall not, except with respect to providing services for Company, directly or indirectly, own, manage, operate, join, be employed by, or control or participate in the ownership, management, operation or control of, or be an officer, director, shareholder, partner, member, or employee or independent contractor of, or consultant to, any other entity engaged in a business in competition with, or similar in nature to, the Company's Business in any geographic area where the Company does business. Said geographic area includes, but is not limited to, the states of Pennsylvania, Maryland, New Jersey, North Carolina, Virginia, California, Texas, Ohio, Washington DC, Iowa, and any other state in which a future business location and/or field office is opened by the Company during Employee's employment.

---

[7] Section 5.1 of the Agreement also provides: "Restrictive Covenants are required for the fair and reasonable protection of the goodwill and business of the Company."

The duration and geographic scope of the provision are within the bounds of enforceability as determined by other Maryland cases.  See PADCO Advisors, Inc. v. Omdahl, 179 F. Supp. 2d 600, 606 (D. Md. 2002) (enforcing a two-year noncompetition restriction); Intelus Corp. v. Barton, 7 F. Supp. 2d 635, 641 (D. Md. 1998) (enforcing an agreement with no geographic limitation because the restriction was reasonable when the plaintiff competed for business nationwide).

In contrast, the scope of the proscribed activity is not properly bounded.  MCS's covenant demands that Jones "shall not . . . directly or indirectly . . . be employed by . . . any other entity . . . in competition with, or similar in nature to, [MCS]."  Agreement § 5.5.  It therefore prohibits Jones from working in any capacity with any company that competes or may compete in any way with MCS.  This sweeping prohibition is not reasonably necessary to protect the customer goodwill Jones created, and it is not narrowly tailored to that end.  It constrains the list of Jones's potential employers instead of targeting possible goodwill-thieving activities.  Taken literally, the covenant would prevent Jones from working in any capacity for a competitor, even if his responsibilities were wholly unrelated to the business of high speed printer maintenance; it would even prevent him from working in Océ's

mailroom.  As a matter of law, therefore, the noncompetition provision is overbroad and unenforceable.

Neither party has cited, nor has this Court found, any binding case law addressing the precise question under review. Nevertheless, this Court finds the Fourth Circuit's reasoning in Deutsche Post, albeit an unpublished opinion, most persuasive. In Deutsche Post, the defendants, two former employees of international mail service provider Deutsche Post Global Mail, Ltd. (Deutsche Post), formed a new company to compete directly with their old employer despite a noncompetition agreement designed to prevent such action.  In a breach of the agreement that the defendants did not dispute, the defendants' new company solicited former Deutsche Post customers and derived the majority of their revenue from converted Deutsche Post clients. Deutsche Post sued alleging breach of contract in response.  Id. at 436-37.

The restrictive covenant at issue in Deutsche Post prevented the defendants from "engag[ing] in any activity which may affect adversely the interests of the Company." Id. at 438. The court held this language was unenforceable, stating that "the restrictive covenant here is much broader than is reasonably necessary to protect [Deutsche Post's] interest . . ., [because] [i]n no way is it specifically targeted at preventing [defendants] from trading on the goodwill they

10

created while serving [Deutsche Post's] customers. Rather, the restrictive covenant seems designed to prevent any kind of competition by [defendants], which is not a legally protected interest under Maryland law." Id. (citing Silver v. Goldberger, 188 A.2d 155, 158-59 (Md. 1963)) (emphasis added).

Similarly, the covenant in this case is not specifically targeted at activities that would jeopardize the goodwill Jones created on behalf of MCS. The instant restriction prevents Jones from working for any competitor, regardless of whether his new responsibilities seek to exploit MCS's goodwill. Indeed, the covenant here does not even stop at preventing mere competition because it limits Jones's employment regardless of whether his responsibilities have anything to do with the high speed printer industry.

In support of its argument, MCS cites the following four cases: Intelus, 7 F. Supp. 2d 635; PADCO, 179 F. Supp. 2d 600; TEKsystems, Inc. v. Bolton, Civil Action No. RDB-08-3099, 2010 WL 447782 (D. Md. Feb. 4, 2010); and MCS Services, Inc. v. Garcia, Case No. 289729-V, 2008 Md. Cir. Ct. LEXIS 3 (Cir. Ct. Md. Mar. 4, 2008). Intelus and PADCO were both decided prior to Deutsche Post and are at odds with the Fourth Circuit's holding to the extent they embrace a willingness to enforce more sweeping covenants. TEKsystems and Garcia, while decided after Deutsche Post, suggest a similar departure from the Fourth

11

Circuit's teaching, and this Court therefore declines to follow them.

On these specific facts, therefore, the Court finds the MCS's noncompetition provision not reasonably necessary to protect MCS's goodwill.  The provision casts a net too wide and does not adhere tightly enough to activity that would threaten a protectable business interest.  Because the provision fails in scope, this Court need not address whether its enforcement would cause undue hardship on Jones or would be contrary to public policy.  Defendants' motion to dismiss will be granted as to MCS's claim for breach of the noncompetition covenant of the Agreement.

## 2.  Nondisclosure

MCS also alleges in its Amended Complaint that Jones violated the nondisclosure provision of the Agreement.  Under Maryland law, businesses may use such agreements to prevent the disclosure of trade secrets to third parties and competitors.  See Tabs Assoc., Inc. v. Brohawn, 475 A.2d 1203, 1210 (Md. Ct. Spec. App. 1984).  Defendants acknowledge that the Agreement between Jones and MCS contained confidentiality and nondisclosure provisions.  Mot. at 3.  Yet, they raise no argument contending that MCS's breach of contract cause of action as to these provisions should be dismissed.  Accordingly, this Court need not address the question further.  Inasmuch as

12

Defendants move to "dismiss the Amended Complaint . . . in all respects" (Mot. at 1) without objecting to this aspect of MCS's claim, their motion will be denied as to the alleged breach of the Agreement's nondisclosure provisions.

**B.    Tortious Interference with the Agreement**

To sustain a claim for tortious interference with a contract, MCS must allege facts sufficient to establish the following five elements: (1) the existence of a contract between Jones and MCS; (2) Océ's knowledge of that contract; (3) Océ's intentional interference with that contract; (4) breach of that contract by Jones; and (5) resulting damages to MCS.  See HavePOWER, LLC v. General Electric Co., 183 F. Supp. 2d 779, 784 (D. Md. 2002) (interpreting Maryland law).  Furthermore, the contract breached must be valid, Fraidin v. Weitzman, 611 A.2d 1046, 1056-57 (Md. 1992), and the interference must have been wrongful and without justification, HavePOWER, 183 F. Supp. 2d at 784.

As discussed above, MCS's noncompetition provision is unenforceable as a matter of law.  It is invalid and therefore cannot provide a basis for a claim of tortious interference with a contract.  See Fraidin, 611 A.2d at 1057.  The nondisclosure provisions, however, are valid and enforceable.  MCS has alleged facts sufficient to show the existence of a confidentiality

contract between Jones and MCS (Am. Compl. ¶¶ 11-13, 16-17), and neither Jones nor Océ dispute this.

Moreover, MCS alleges Océ had actual knowledge of the confidentiality agreement and indeed reviewed it prior to offering Jones a position. Am. Compl. ¶ 33. Even so, Océ hired and then allegedly accepted from Jones MCS's confidential customer lists, thereby satisfying elements three and four of Count II. Id. at ¶ 21, 33-34. Regarding damages, MCS alleges it has suffered a loss of customers and revenue as a result of Océ's improper conduct. Id. at ¶ 35. While MCS does not discuss which specific customers it has lost, it alleges facts from which the Court can plausibly infer it suffered damages by the misappropriation of its confidential customer list. At this stage in litigation, these allegations are sufficient to survive a motion to dismiss, and Defendants' motion as to this count will be denied.

**C.    Intentional Interference with a Prospective Advantage**

The elements MCS must establish to sustain Count III are very similar to those for Count II. They are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in its lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of defendants (which constitutes malice); and (4) actual damages and loss resulting." HavePOWER,

183 F. Supp. 2d at 784. "Unlawful purpose" can mean "intimidation . . . or [the] threat of groundless civil suits." K & K Mgmt., Inc. v. Lee, 557 A.2d 965, 979 (Md. 1989).

Here, too, MCS alleges sufficient facts. The Amended Complaint claims Océ hired Jones and accepted from him confidential MCS trade secrets (Am. Compl. ¶ 21) and then used such information to intimidate MCS customers by "stating and/or implying that [Océ] would bring suit against certain of MCS's customers . . . unless [they] ceased doing business with MCS" (id. at ¶ 39). In turn, MCS cites lost customers and revenue as damages. Id. at ¶ 40. MCS has therefore alleged facts sufficient to sustain a plausible claim for relief, and Defendants' motion to dismiss this count will also be denied.

### D. Violations of the Maryland Uniform Trade Secret Act

The Maryland Uniform Trade Secret Act (MUTSA) provides statutory remedies for the misappropriation of trade secrets. Under the statute, "misappropriation" means the:

> [d]isclosure or use of a trade secret of another . . .
> by a person who . . . knew or had reason to know that
> the person's knowledge of the trade secret was . . .
> [a]cquired under circumstances giving rise to a duty
> to maintain its secrecy or limit its use.

Md. Code Ann., Com. Law § 11-1201(c) (West 2010). MUTSA also defines "trade secret" as:

> information . . . that: (1) derives independent
> economic value . . . from not being generally known
> to, and not being readily ascertainable by . . . other

persons who can obtain economic value from its
disclosure or use; and (2) is the subject of efforts .
. . to maintain its secrecy.

Id. at § 11-1201(e).  Maryland courts have previously recognized

customer lists as trade secrets.  Home Paramount Pest Control

Cos. v. FMC Corp., 107 F. Supp. 2d 684, 692 (D. Md. 2000)

("There is no question that a customer list can constitute a

trade secret."); PADCO, 179 F. Supp. 2d at 609-11 (applying

Maryland law and finding that if adequately protected from

public disclosure, compiled customer lists are trade secrets

when they are competitively valuable and their owner derives

independent economic value from them).

As alleged, both Jones and Océ were aware of Jones's

obligation to keep confidential a long list of information MCS

considered trade secrets, so Océ's acquisition of any MCS trade

secrets could plausibly amount to misappropriation.  Defendants,

contrary to the plain language of the Amended Complaint, argue

that MCS failed to identify precisely what trade secrets Océ

misappropriated.  Several paragraphs of the Amended Complaint

contain the information Defendants seek, not the least of which

is Paragraph 46 in which MCS alleges "Jones . . . shared . . .

trade secrets and confidential information with Océ," including

"customer lists, customer requirements, customer contact

information, MCS customer pricing information, and MCS marketing

strategies."  Am. Compl. ¶ 46.

MCS also alleges sufficient facts from which the Court can plausibly infer the customer lists in question qualify as trade secrets under MUTSA. The collection of customer names, requirements, pricing and marketing strategies likely amounts to a compilation of information with independent economic value. MCS exerted significant resources to create the lists and claims they generate a substantial amount of MCS's income. Id. at ¶ 45. Significantly, MCS also asserts that one of its competitive advantages is derived from its ability to operate at costs lower than those of its competitors. Id. at ¶ 8. A list of pricing and marketing strategies, therefore, would be particularly valuable to both MCS and its competitors. In recognition of its value, MCS sought to maintain the customer lists' secrecy by providing their contents to its employees only on an "as-needed" basis (id. at ¶ 45) and requiring its employees to sign a nondisclosure agreement. MCS has thus alleged facts sufficient to sustain its claim that its customer lists are trade secrets and that they were misappropriated by Jones and Océ.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. Plaintiff's motion to file a surreply will be denied as moot. A separate order will issue.

                                           /s/
                                   _____
                                   William M. Nickerson
                                   Senior United States District Judge

October 1, 2010